UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICKY DAVIS,

                Plaintiff,                Case No. 1:10-cv-969

v.                                            Honorable Robert Holmes Bell

PRISON HEALTH SERVICES et al.,

                Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated at the Florence Crane Correctional Facility (ACF). In his *pro se* complaint, he sues Prison Health Services and the following ACF employees: Health Unit Manager (unknown) Scharfnaar, Public Works Supervisor (unknown) Decline and Corrections Officer (unkown) Kast.

Plaintiff, an insulin-dependent diabetic, was cleared by health care for employment on a public-works crew. He claims that he was terminated from his public-works employment on December 2, 2009, after an incident in which he expressed concern about a possible medical emergency due to having low blood sugar. As a result of the incident, Defendant Scharfnaar restricted Plaintiff to facility grounds work. Plaintiff filed a Step I grievance alleging in part:

> Ricky Davis (hereinafter grievant), files this Complaint/Grievance against medical health care manager Suchorfhaar [sic] for issuing a medical order preventing Grievant from working public works detail. While on work assignment grievant complained about his sugar being low. Sgt. Officer Kass [sic] gave another prisoner a honey pack to give to Grievant as if to imply some sort of agitation/discrimination due to Grievant being openly gay. Sgt. Dekline [sic] and Officer Kass [sic] had Grievant fill out a medical health request, and seen [sic] by a health care Nurse upon return to the facility. After being seen by a health care Nurse, it was determined Grievant's sugar was normal. This is the first time such an illness occurred, which, after taking the honey, Grievant was okay. The honey in question has been provided by health care to public works Supervisor's [sic] for prisoners that are diabetic. However, according to the health care manager, Grievant was told he's being removed because of his being diabetic, and she ("Suchorfhaar") [sic] wasn't going to be responsible if something happened to grievant while out on work assignment.
>
> In order for Suchorfhaar [sic] to remove Grievant for such a matter, she would also have to remove all prisoners that are diabetic's [sic], and similarly situated, because to do otherwise, Grievant would . . .[1]

(Step I Grievance ACF 2009-12-1181-12z, Page ID#14.) The Step I grievance respondent provided the following explanation for his removal from his public works job assignment:

---

[1]Plaintiff provided only the first page of his Step I grievance.

> While out on public works assignment, grievant complained of his "sugar" being low causing PW Officer to return the PW group to the facility. Custody concerns of reoccur[r]ence and disruption to the work group, possible security risk in the public by the remainder of the group while the officer is attending to grievant's medical condition caused the medical provider to restrict him to facility grounds work. Grievant admitted to HUM he is non compliant with diabetic recommendations.

(Step I Grievance Response ACF 2009-12-1181-12z, Page ID#13.) The Step I response was upheld at Steps II and III of the prison grievance process.

Plaintiff alleges in his complaint that the reason given for his termination was pretexual and that he was terminated from public works solely because he is gay. Plaintiff claims that his sexual orientation was well-known by prison staff and the public works officers were uncomfortable with his homosexuality. Plaintiff asserts a First Amendment retaliation claims as well as violations of his Fourteenth Amendment due process and equal protection rights. Plaintiff seeks injunctive relief and monetary damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To the extent Plaintiff claims that he was wrongfully terminated from his prison job without due process, he fails to state a claim. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a

property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Plaintiff also claims that Defendants "retaliated" against him for being homosexual by terminating his public works employment. However, in order to state a retaliation claim, Plaintiff must have engaged in conduct protected by the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Being homosexual, in and of itself, is not "protected conduct" for which Plaintiff could sustain a retaliation claim. Instead, the Court must consider whether Defendants violated the Fourteenth Amendment's Equal Protection Clause when they terminated him from public works employment. Plaintiff alleges that he was terminated from public works solely because he is gay and that the reason given for his termination was pretexual. He contends that Defendants' discriminatory animus is evident from the fact that other insulin dependent diabetics remain employed on public works.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998). Likewise,

homosexuals are not a suspect class. *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges that he was treated differently from other insulin-dependent diabetics who were on public works. However, Plaintiff, fails to identify any other diabetic prisoner who caused an incident requiring the work crew to return to the facility prematurely so that he could receive medical treatment. Such a disruption while a public works crew is out on assignment has clear public safety implications. While Plaintiff suggests that Defendants overreacted by taking him back to the facility, Plaintiff alleges in his complaint that he was "concerned about a possible Medical Emergency that may occur if Plaintiff['s] sugar was, in fact, low." (Compl., 1, Page ID#5.) In the face of a possible medical emergency posed by a diabetic prisoner, it was more than reasonable for Defendants to immediately return Plaintiff to the prison to have his blood sugar checked. Consequently, Plaintiff has failed to identify prisoners who were similarly situated in all relevant respects. *See Tri-Health, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 791 (6th Cir. 2005)

(discussing requirement that similarly situated inquiry requires disproving all conceivable bases for distinguishing comparables).

Even if Defendants had treated Plaintiff differently from other similarly situated diabetics, the Supreme Court recently has recognized that rational basis scrutiny is not properly applied to employment decisions and other discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 128 S. Ct. 2146, 2154 (2008). While Engquist involved an equal protection claim arising in the context of public employment, the rationale of that holding arguably extends to a prison setting where government officials must make subjective discretionary decisions, and it is well accepted that courts are to afford prison officials great deference in their management of correctional facilities. *See Hewitt v. Helms*, 459 U.S. 460 (1983); *Hutto v. Finney*, 437 U.S. 678 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Prison officials should have broad discretion in deciding whether a diabetic prisoner should be employed on a public-works crew outside of the prison walls. As discussed in *Engquist*, the application of rational basis scrutiny "undermine[s] the very discretion that [the Director is] entrusted to exercise." 128 S. Ct. at 2154; *see also Franks v. Rubitschun*, No. 5:06-cv-164, 2010 WL 1424253, at *8 (W.D. Mich. Mar. 31, 2010) (applying *Engquist* to parole decision).

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate ing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 3, 2010  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE